Good morning, Illinois Appellate Court, 1st District Court is now in session, the 3rd Division, the Honorable Justice Nathaniel House Jr. presiding, case number 1-9-0-3-9-6, Illinois Road and Transportation Builders Association versus County of Cook. Good morning, this case is being heard via Zoom due to the COVID crisis. My name is Nathaniel House and presiding over this case with me are Justices David Ellis and Eileen Burke. We're going to proceed in this manner. Each side will be given 10 minutes to make an uninterrupted presentation and at the end of the presentation, the judges will in turn ask questions of the presenter. The appellant will be given a chance to give a short rebuttal and that'll be followed by questions to possibly both parties. Does anyone have any questions about how we're going to proceed today? No, your honor. No, your honor. Okay, will the parties who are going to make a presentation please state their names, followed by the party they represent, starting with the appellant. Good morning, your honor. It's John Fitzgerald for the plaintiff's appellants. And James Belagradis, Assistant State's Attorney for the defendant, County of Cook. Okay, all right, very well then. We can proceed. Mr. Fitzgerald, whenever you're ready. Thank you, Justice House, and may it please the court. Today, I am speaking on behalf of 11 nonprofit associations that collectively represent every imaginable segment of the transportation design and construction industry. The plaintiffs filed this lawsuit for declaratory and injunctive relief to enforce the plain and unambiguous terms of the Safe Roads Amendment to the Illinois Constitution. The plaintiffs reluctantly took this step because Cook County's unconstitutional diversion of hundreds of millions of dollars in transportation tax revenue is causing direct economic harm to the plaintiffs' members. That diversion is depriving the plaintiffs' members of opportunities to work to improve the county's crumbling transportation infrastructure and to earn revenue from that critically important work. The circuit court dismissed our complaint pursuant to sections 2615 and 2619A9 of the Code of Civil Procedure. We ask for reversal and an opportunity to proceed past the pleading stage of this litigation. Today, I would like to first discuss the Safe Roads Amendment and explain why it should be enforced as written. Then, I would like to explain why the county failed to meet its burden to show that the plaintiffs lack standing. The Safe Roads Amendment appears at Article 9, Section 11 of the Constitution. No fewer than six times in its brief, the county refers to that amendment as plain. On that point, we agree the language is plain. The amendment has six subsections. Subsection A defines which transportation taxes and fees fall within the scope of the amendment. In this case, there is no dispute that the taxes identified in our complaint fall within the scope of Subsection A. Subsection A also provides that no monies, including bond proceeds, derived from any of those taxes and fees shall be expended for purposes other than as provided in Subsections B and C. That is a clear and unambiguous prohibition. Subsection B then says that transportation funds may be expended for a list of specified transportation purposes. Then, it says that in addition to those specified transportation purposes, transportation funds may also be expended for, with respect to local governments, other transportation purposes as authorized by law. Subsection C further defines and limits one of the specified transportation purposes that is listed in Subsection B. And then, Subsection D contains another clear prohibition. It states none of the revenues described in Subsection A of this section shall, by transfer, offset, or otherwise, be diverted to any purpose other than those described in Subsections B and C of this section. That language is sweeping, it is broad, and it is unambiguous. Subsection E addresses funding for new modes of transportation. And finally, Subsection F states federal funds may be spent for any purposes authorized by federal law. Subsection F is important because it shows that when the drafters wanted to exempt something from the amendment scope, they said so expressly, not by implication. That is what the amendment says. On its face, there is no exemption for home rural units of government. It applies to local governments without exception, just like other provisions of the clause in Article 13, Section 5. And as the Illinois Supreme Court explained in Kenurva v. Williams, no court may read restrictions or limitations into the Constitution that the drafters did not express and the citizens of Illinois did not approve. The county makes a number of arguments to avoid this plain and unambiguous language. None of those arguments have merit. First, the county says that the court is not bound by the amendment's literal language. That is not true. The language of our Constitution is binding and it should be enforced as written. Second, the county argues that some sort of legislation was necessary to make the amendment effective or to make it applicable to home rural units of government. That is incorrect. Constitutional legislation were necessary. The General Assembly has now enacted the Transportation Funding Protection Act, which expressly states that all the funds described in the amendment are dedicated to transportation purposes and shall not, by transfer, offset, or otherwise, be diverted by any local government, including without limitation any home rural unit of government, to any purpose other than transportation purposes. And the act is expressly declarative of existing law. Next, the county argues that the amendment doesn't apply to home rural units of government because it appears in the revenue article, Article 9 of the Constitution. No court has ever held that home rural units of government are exempt from the revenue article. And in fact, we cite a the dismissal of a uniformity clause challenge to the Cook County Amusement Tax Ordinance. So clearly, home rural units are subject to provisions in the Constitution's revenue article, such as the uniformity clause and the Safe Roads Amendment. The county also relies on extrinsic evidence to interpret the amendment. But the county repeatedly admits in its brief that the amendment's evidence is not appropriate. Again, we are talking here about a constitutional amendment. And when the voters went to the polls to vote on that amendment, which they approved by 80% of the vote, they were shown the amendment's actual language, not a transcript of any debate in the General Assembly. Moving on to the issue of standing, it is important to remember that the lack of standing is an affirmative defense, and it is the county's burden to show that we lack standing. As held in the Winnebago County case cited in our briefs, dismissal for lack of standing is erroneous, unless it is clear from the pleadings that it would be impossible for the plaintiffs to have standing, that there is no set of facts under which we could have standing. The county cannot meet that burden. The Illinois Supreme Court has an associational standing. And the only disputed issue here concerning associational standing is whether the plaintiff's members would have standing on their own. They do, for two independent reasons. First, our members are suffering direct economic harm, because the diversion of this tax revenue deprives them of opportunities to earn money from road construction and other transportation infrastructure projects. In that sense, the plaintiff's members are just like the members of the Women's Chamber of Commerce, who had standing to enforce the Small Business Administration's obligation to finish a study that was necessary for women contractors to receive preferential treatment and contract bidding. The plaintiffs are also like the West Virginia Health Clinics, who had standing to enforce the federal government's obligation to give a sufficiently large block grant to the state of West Virginia for public health purposes in the Heckler case. In those cases, the government's failure to comply with its legal obligations diminished the plaintiffs' economic opportunities. It diminished their opportunities to compete for additional revenue. And in those cases, the plaintiffs were not required to show that their members were guaranteed to receive more money if the government complied with its obligations. So long as there was a substantial probability that at least one of their members would benefit from an end to the government's illegal conduct. And in this case, the plaintiffs' members encompass the entire transportation design and construction industry. Everyone from the engineers, to the contractors, to the suppliers of stone and steel. So it is at least a reasonable inference from our pleadings that at least one member of one of the plaintiffs will benefit from an end to the county's illegal diversion of hundreds of millions of dollars in transportation tax revenue. The plaintiffs have standing for the additional and independent reason that their members include at least one Cook County taxpayer who has standing to enjoin the county's illegal use of public funds. And aside from the illegality of the diversion of these funds, that diversion harms taxpayers in at least two distinct ways. First, as the county admits in a report that is attached to our complaint, at page 132 of the common law record, quote, failure to invest in transportation shifts more of the cost of moving people and goods to taxpayers. Second, as the county admits in the same report, which again is an exhibit to our complaint, the longer that the county's needs in the long run. And that imposes a greater burden on the county's taxpayers. So for all those reasons, the plaintiffs ask this court to vacate and reverse the circuit court's dismissal order and to allow us an opportunity to proceed past the pleading stage of this litigation. Thank you. Thank you. Justice Burke, do you have any questions? No, I'm going to defer to Justice Ellis. Okay. Don't be afraid. We may regret that, Justice Burke, but let me first say that I'm having a tiny bit of internet connection problems, so if we're having problems, we'll just have to kind of roll with the punches here. But thank you, Justice Burke, and thank you, Mr. Fitzgerald, for your presentation. I want to see if I got my questions broadly. And so I'll describe to you how I see this, and you tell me anything I say that's wrong. If we put aside federal funds, which have nothing to do with this case, it seems to me, and Mr. Bellagrass, this question is coming to you, too, so I want you to also be ready to answer it. It seems to me that we can categorize the different revenues that a home renewal unit like Cook County could get into one of three different categories. The first is when the state taxes something, and eventually some of that state tax money gets sent down to the units of local government. That's one, right? And that's going to be governed by statute. The General Assembly will impose a tax, or will call for the imposition of a tax. The Executive Branch will tax it, they'll collect it, they'll distribute it to funds, and some executive officer will send some of that money down to the state, pursuant to statute, all pursuant to statute. So I view that as Category 1. Category 2 is when units of local government impose taxes, but they do so by virtue of a statute, not of their own independent power. Non-home rules have no constitution. Non-home rules only have taxing power that is given to them by statute. And then home rule units have some limitations on their power to tax. They can't tax income or occupation, so they can't impose an income tax or a sales tax, unless given the authority by statute. So in any context in which one of these units of local government doesn't have the power, but they're giving it by statute to impose a tax, that's Category Number 2. Also, I think, governed by statute, indisputably governed by statute. And the third category is, I think, what we're talking about here, where you have a home rule unit with the independent constitutional authority to tax that imposes its own there could be one that didn't preempt their home rule powers. I don't know why they would do that. But there's no governing statute involved. Do you think I have I laid out those three categories of revenues correctly, as you understand it? I believe you have, Your Honor. I agree with that description of the categories. The only thing I would add is that if we are talking about I think we have to include the Transportation Funding Protection Act as well as part of the statutes that are relevant. But I agree with the categories that Your Honor described. Okay, fair point. We should talk about that act. So as I understand the county, the county is saying that you've listed a number of taxes, and their position is that all of these, I think, six or seven taxes are governed were adopted pursuant to county ordinance under the county's constitutional home rule authority. In other words, they were not. None of them were guided, governed or in any way dictated to by statute. Is that how you understand their argument? Um, I think that might be what the county is arguing, Your Honor. I don't think that the county has put it in those terms, but I think that's roughly my understanding of the position that the county has taken in this case. Okay. Do you think that they're right about that? Or even if we can forget about what the county is saying, do you agree with that? That these none of these? I think there's 1, 2, 3, 4, 5. There's six county ordinances. There's no statute that dictates how they impose any of those taxes. Do you agree with that? How they how they impose the taxes, how they assess the taxes. Um, that that's if that's my understanding, Your Honor. And how and how they spend those revenues? Well, again, we have the Transportation Funding Protection Act and the amendment. But aside from the amendments in the Transportation Funding Protection Act, I would agree. Okay. Okay. Um, because I was a little confused about the Home Rule County Use Tax Ordinance. But as far as I can tell, that was not promulgated pursuant to a state law. It was by ordinance, but I can't tell. And obviously, if it's governed by ordinance by statutes, that makes the county's argument a little bit more difficult to understand. And so again, Mr Bellagratis, you're getting that question, too. Um, okay, so let's talk about the amendment a little bit. Um, you talk about subsection A being very broad, and I think that there's no denying it's very broadly written. Um, I think the county is focusing on subsection B, and I want to ask you about subsection B. So the first sentence of subsection B, and I'm trying to pull it up here. Forgive me. It says it says transportation funds may be expended for the following. It gives a list, and it ends the list by saying and other statutory highway purposes. And when we're construing a statute or a constitutional provision, don't we usually take a wrap up phrase that has the word other in it, followed by a interpret that modifier is modifying everything. Yes, Your Honor. I think that is the rule of the last antecedent. However, I think it reads a bit differently. So on. And by the way, I can share my screen to show the language I'm referring to. That would be helpful. Otherwise, I can just kind of, uh, discuss this. Whatever would be best for the panel. So so we have this list, and there are a few semi colons in here, too. And so I think so. The list includes cost for construction, reconstruction, maintenance, repair and betterment of highways, roads, streets, bridges, mass transit, intercity passenger rail, ports, airports or other forms of transportation. So I think the wrap up clause here is other forms of transportation. Then we have a semi colon, and then we have and other statutory highway purposes. So I think the wrap up clause here is other forms of transportation. It can't be that other statutory highway purposes is the wrap up clause because highway purposes, for example, wouldn't include airports. So I think the wrap up clause here is other forms of transportation. So subsection B tells us what it means by transportation or and that's everything, uh, in this list cost for construction going on through ports, airports or other forms of transportation. So I would not interpret and other statutory highway purposes to be the wrap up clause over the capsule provision because again, it just doesn't make sense to categorize mass transit or ports or airports to constitute statutory highway purposes. But virtually everything and the word statute or laws appears a number of times in just in that first sentence, right? And then and then subsection C plays off that first clause about administering laws. When when you see statutory laws, we're talking about state laws, aren't we? Well, I think we're talking about perhaps primarily state laws, but I think it's important to isolate each instance where the word statute is used in each instance where the word law is used. So statutory comes up in a few specific instances. So, for example, in the third line of subsection B statutory refunds. Okay, well, that there we're only talking about one particular thing that's governed by a statute and again, statutory highway purposes. The word statutory only modifies highway purposes. Now, the word law does appear a few times here. I think law certainly encompasses state if the drafters, um, wanted the last line of subsection B, which I think is probably one thing that we're about to discuss in a moment. If they wanted to say mandated by state statute, I think they would have said mandated by state statute instead of authorized by law, which is which is broader. You think by law doesn't mean by statute? I think it encompasses statutes, but here's how I interpret the last line of subsection B. And if I'm jumping around or if I'm not addressing the right question, please let me know. But in the first half of subsection B, you have this list of what of what this money can be spent on. And that ends with or other forms of transportation, which I think is the catch all. And there's that canon of construction, you just and generous where you have a list followed by a catch all. The catch all is construed to mean things that are like or in the spirit of the things that are listed. So then it goes on and then it says, and with respect to local governments, other transportation purposes is authorized by law. So what I take that to mean is that a local government has a little more leeway than the state government does under this system. If you are a local government, you can spend this money on a transportation purpose. And I would underscore the word transportation there. As long as it's authorized by law, as long as there's no other law that might restrict, for example, where a road is built or how a bridge is built. If there are some independent legal restrictions on how a transportation project can be done, this doesn't affect whatever those independent legal restrictions might be. Environmental laws, labor laws, eminent domain, the whole panoply of laws that might apply whenever any unit of local government has a transportation project that might limit how that project is constructed or built. But it says, with respect to local governments, it does not distinguish between home rule and non home rule units. If a home rule unit was adopting an ordinance, a tax ordinance that's related to transportation and spent that money, it would not need to look to a statute, would it? We need to look to a statute. I mean, we can argue about what by law means. It seems to me the case law is pretty clear that by law means by statute. And I think the Constitution uses that phrase to exclude by statute. If your argument depends on a different interpretation, then maybe we should have more of a discussion about that. But I've always understood the phrase by law in the Constitution. It's in the Constitution. It's also in the case law. And it's also all over the statutes that by law means by act of the General Assembly. There's even one place in the local government article where the home rule section is. It's not in the home rule section, but it's in that article where it talks about how the county can elect officers as authorized by law or by county ordinance. They literally make the distinction. Does your argument depend on by law, meaning something other than by statute? It doesn't, Your Honor. And and I can explain. I think there are a few reasons why, but I think the biggest reason is this. So even if authorized by law means authorized by statute, and even if it means mandated by statute, which I think is the county's argument, and I think I think that's incorrect. I think, you know, it could mean permitted by law, permitted by statute. But even if the county is right, that somehow this means mandated by a state statute in some way. Where does that leave the county? I think it means that the county can spend these revenues on one of the transportation purposes that is listed in the first half of subsection B, or it may spend that money on a transportation purpose. And again, it has to be transportation purpose authorized by law. So I have tended to view the phrase authorized by law a little more broadly. But even if it means authorized by statute, we have the same outcome here, which is that the county can spend that money on one of the enumerated one of the enumerated transportation functions listed in the first half of B or on some other transportation function that is authorized by statute. But not another transportation purpose that's authorized by county ordinance if adopted pursuant to home rule power? So I think that, so this is where I think by law could be broader. That's my own view on how by law can be construed. But I think the point is it has to be on a transportation purpose. And it says authorized by law. It seems to me that if the county spends this money on a transportation purpose, and assuming it really is a transportation purpose, as long as it's, I think if it says the money on a transportation purpose, it's compliant with the amendment. And what we're saying here is the county is spending these revenues on things that cannot reasonably be deemed by any measure a transportation purpose. Sure. No, I understand that part with the public safety fund. What's what's what's troubling me is is that local governments are alike in one sense and very unalike in another sense if their home rule versus not. Regardless of whether their home rule or not, any local government is limited by state law if they either don't have the power or the statute is preempted home rule. And this is talking about local governments together. It's talking about home rules and non home rules, which share that characteristic only if they're getting their money pursuant to a statute. If they're getting it pursuant, if the home rule is doing it on its own, it's not like a local and it's not. It doesn't need to look to law to a statute for authorization, which I think is part of the argument the county is making as to why that suggests this was never intended to separate out home rules doing their own thing under their own freestanding constitutional authority. Well, 11 problem with that argument, Your Honor, is that it conflates two things. It conflates the the legal authority to assess attacks with the legal authority to spend it. This language at the end of subsection B relates to the spending of the money, not the assessing and not the collecting of the money. So it goes on to say, with respect to local governments, other transportation purposes is authorized by law. I don't follow what you just said, Mr. Fitzgerald. I'm sorry. Okay, you're differentiating between taxing and spending. Uh, that is certainly 11 thing. Subsection B at the end, uh, is talking about, uh, transportation purposes. The money can be expended for transportation purposes. I thought is all is authorized by law and sure, but if you're talking, but if you're talking, can you so easily separate those two things? I mean, if you're a home rule unit, you probably get your own. You adopt your own ordinance that creates a tax of any kind, transportation or otherwise. No statute is going to tell you how to spend it unless it wants to preempt home rule. I mean, that would be a very odd statute that said you tax however you want, but we're gonna preempt home rule and tell you how to spend it. They could. The General Assembly could, but that's only in that context, which is when local governments are all alike. Well, I think the General Assembly has done that in the Transportation Funding Protection Act. Okay, so we'll, we'll get to that in a second. Let me ask you about subsection E. So subsection E and I don't have it right in front of me, but it says it basically says, and I will get to it in a second. It basically says if the General Assembly starts appropriating money for another form of transportation, it has to dedicate a revenue source to it. So how I read that is they're saying, look, we can't see the future. I mean, I just bought my small children hoverboards, which are motorized skateboards, if you don't know. There's all sorts of things happening, right? In 30 years, the state of Illinois might look like an episode of the Jetsons, and we might all be shooting around in spacecraft 10 feet off the ground, and there may be no more highways. They may have to do air highways. I mean, there could be all sorts of things down the road that we might know nothing about. And what this provision is saying, subsection E is if a mode of transportation that we haven't thought of yet becomes important enough to the state of Illinois that it starts spending money on it, it appropriates funds for it, it's gonna have to dedicate a tax to it. And probably it would be a transportation related tax, which of course would then lock it in under subsection A and say, you gotta spend it for transportation purposes. It's sort of a belt and suspenders trying to see into the future. Is that how you understand it? Yes, Your Honor. If this constitutional amendment was intended to also rope in taxes imposed by a home rule unit pursuant to its constitutional authority, independent of any statute, why aren't home rule units mentioned in subsection E? Why only the General Assembly? I think that is a subsection that was intended to specifically address state funding for a new mode of transportation. I think the drafters were focused on state funding for a new mode of transportation. There's something else, by the way, that I think is really important here. And as the cases say numerous times, and we cite the illegal women voters case in our briefs, the meaning of any constitutional provision depends on the common understanding of the voters who approved it, who gave it life. If this were intended to exempt home rule units, that would be a very significant limitation on the reach of this amendment. If it were only intended to apply to the state government and to local governments that lack home rule authority, especially because home rule governments tend to be large metropolitan areas that have a lot of transportation needs and that tend to impose a lot of taxes and fees on transportation. If the drafters intended there to be an exception for home rule units, that would be very clearly stated somewhere within the four corners of this amendment, similar to the exemption in subsection F for federal funds. It wouldn't be stated by implication. And I don't think that any reasonable voter reading this language would intuit or infer some exemption for all home rule units of government. So that's one point that I feel is very important. But I suppose the county would say that if you're going to preempt home rule powers, you should at least mention the phrase home rule somewhere in the words home rule never appear. We all know that in state laws, if the general assembly wants to preempt home rule, they have to say it. We all know that there's a statute that the statute on statutes requires it. We all know what the language looks like. You know, this section is a denial or limitation on the home rule powers and, you know, functions. And yet the phrase home rule doesn't appear here. The phrase local governments appears, and it appears in subsection B when it talks about when they can do things authorized by law. That's treating them all alike. I don't think the argument is that home rule units are governed by this at all. They surely are. They're governed by this every time, like any other unit, they get money from the state. The question here is, what about when they don't use state statutes? What about when they just do it on their own? I think it's a little oversimplified to say this doesn't apply to them at all. You make a good point that it doesn't say this doesn't apply to home rule units, but it also doesn't say it does, and it doesn't really give any indication it does. And it sort of makes me wonder, Okay, what do we do with that? And so one of the things I would look at, I'm sorry, Mr. Believe me, I will let you respond. I'm rambling a little bit, but one of the things you would look at when you talk about the common understanding of the voters is what were they told in the pamphlets and the pamphlets that it doesn't alter home rule powers, which I would take to mean if I read that, okay, home rule stuff is sacrosanct. It's not governed by this. Um, and obviously we have the legislative history and obviously, especially that exchange between Senator Raul and Senator Hayne. He literally listed out all these county taxes and said they weren't. They weren't affected. I'm sure you have plenty to say about that, but it seems to me, um, at a minimum, there's a fair question and maybe an ambiguity as to whether this applies to home. So what is your argument to tell me that it unambiguously does include home rule generated taxes and revenues? So, um, and as I'm sure your honor can, uh, can understand, I have quite a few things to say about that. The first is that the first is that your honor referred to a to a canon of statutory instruction, which has never been applied. So far as I can tell to constitutional interpretation, I don't think anyone, any court has ever held, uh, that when a constitutional provision, uh, in order to apply to home rule units, that a constitutional provision has to express the state that it applies to home rule units. And in fact, plenty of provisions of the constitution, one which I mentioned earlier was article 13 section five, the pension protection clause that also does not use the term home rule. It also says nothing specifically about home rule. It refers to local governments, but we know from Jones versus Mavis, it absolutely does apply to local governments. Uh, we have, you know, plenty of provisions of the constitution that without question restrict home rule units, including, uh, they restrict the way that home rule units can, can tax and spend. Uh, but they don't specifically mention home rule units. There's, there's the revenue clause. We cite the Waskin versus Lowe's. Uh, there's, in our briefs, we cited a provision of, of the article of the education article that says no counties may, uh, may spend taxpayer money on churches. It doesn't specifically mention home rule powers. So if we're going to import that rule of statutory construction into constitutional interpretation, that will change our understanding of the number of constitutional provisions. The other thing I would say, and I'm glad that Ronra mentioned the pamphlet, the pamphlet. And again, we don't believe that it ought to be considered because we believe this, this language is unambiguous, but even if you do consider it, you have to, to read it cover to cover the county cherry picks half a sentence out of context. So the, the pamphlet could not be clear at one point it says, and this is at page 41 of the record, it promises voters that the amendment will quote, ensure that only for transportation purposes. It doesn't, it doesn't get clearer than that. That is an absolutely clear promise about what this language is going to achieve. So the county cherry picks that half a sentence about altering home rule powers. Now, again, if home rule units were exempted, uh, that would be a very big deal. And I think it would be very clearly stated in the amendment would also be very clearly stated in the pamphlet. It is not. So what does that half a sentence mean that it wasn't intended to alter home rule powers? I think it means something very simple, which is that this was not some, uh, backdoor effort to, to change the formulation of what a home rule unit is or what its powers are generally. There never has been a home rule power to violate generally applicable restraints on governmental power. When they appear in the constitution, uh, it's well established that whatever the constitution, uh, includes in any article of the constitution, some restraint on governmental power that applies across the board to the state government and to all local governments. Of course, that also applies to home rule units of government. That's true about the bill of rights. It's true about the pension protection clause. It's true about any year. So, so it doesn't, it applies to home rule units, but it doesn't alter home rule powers. It's not changing the definition in, in article seven, section six of what a home rule unit is and what its powers are. So this was, this wasn't some effort to bring back Dylan's rule or something like that. And again, if, if the idea here was to tell voters that home rule units are going to be completely exempted here, I think that would be very clearly stated in language that any, that any lay person could understand. And it's simply not. Do you want to talk about this law that was passed that you guys have both weighed in on the transportation funding protection act? Uh, yes, your honor. So as I mentioned, uh, in my argument, I think it's a very important, uh, clarification of what the general assembly intended, uh, by, uh, by the amendment. Uh, it is expressly declarative of existing law. Uh, this was passed, uh, just a few months after the circuit court, uh, ruled in this litigation and the general assembly almost unanimously stated very, very clearly that the amendment applies without limitation to home rule units of government. And so I know that the County relies on an exchange between two state senators in the transcript. And we've made our views about that well over three fifths of the majorities of both houses of the general assembly and signed into law by the governor that, that I think removes any trace of the doubt, uh, that the amendment applies to home rule units of government and that home rule units may not, uh, divert from transportation purposes, any of the revenues that are described in the amendment. If that's true, then why didn't this public act preempt home rule powers? Well, I think it, well, so first of all, it was intended just to, uh, clarify or to declare the state of existing law. And again, when you have a constitutional amendment that doesn't have to contain an express statement that it preempts home rule powers, uh, that's, that's not a rule that has ever been applied to the constitution or to any amendments to the constitution. This was an express, an expression of legislative intent, but it's always been applied to statutes. If this act was intended to tell a home rule unit that it had to spend every dollar, including its own dollars, it would have to preempt home rule. Wouldn't it? Uh, I'm not, I mean, otherwise this is just a, a symbolic gesture. This means absolutely nothing. I mean, sometimes the general assembly will pass the law and say, this act is declarative of existing law. Sometimes that's a in my experience, but if, if, if, if, if it said what it said and didn't preempt home rule and, and it supports your position, then this is nothing but symbolism. There's no legal effect to this at all in a home rule unit. Okay. I think it, it does, uh, it, it does grant home rule power. It does clearly apply to home or leanness of government and very unambiguous language. It may not be the, the conventional formulation of the statute does. Yes. It might not be, it might not use the conventional language for that, but it very clearly applies to home rule units and it specifically calls out home rule units. Well, the county would say that's because home rule units like any unit of local government has to spend money that it gets pursuant to statute. But neither the amendment nor the act in any way makes that distinction. And that would be a significant limitation of the scope of the amendment that would be clearly stated if it weren't. Yeah. I'm just talking about the statute. I'm not saying how the statute helps you. Okay. I think it helps us because it very clearly reflects the general assembly's intent. Contrary to the, the exchange between two senators in that transcript that this does apply to home early years. Mm hmm. Um, I saw on the website, uh, looking at this constitutional amendment, I saw the, um, the, uh, proponents and opponents, which is, you know, it's a public record on the website. Sure. You've looked at those on the general assembly website. Did you notice that neither the county of cook or the city of Chicago was opposed to this bill? Um, I, I understand that's the case. Again, this is extrinsic evidence that they don't consider. No, it is. But, um, I'm, I'm aware of that. Your honor. Yeah. And every state representative and every state senator from Chicago or cook voted for it because that's what the people wanted them to do. This is something that was passed with 80% of the vote. So they were representing their constituents when they supported this. Okay. I'm talking out of school a little bit. It was just something that interested me. It's not the basis for a judicial opinion. I just thought that was interesting. Um, all right, Mr. Fitzgerald, thank you. I put you under the microscope. I appreciate it. Thank you, your honor. Thank you. I just had one question. When you look at the proposition presented to the voters and they say that it was not intended to affect the powers of a home unit, what do you think conceivably the statute could have? What powers of a home rule unit do you think conceivably they had in mind when they said it doesn't affect the home rule unit? Well, it doesn't say that it doesn't affect home rule units. It says it was not intended to alter, uh, to alter home rule powers. And I think, um, and I have the language summary here, uh, in front of you. I agree with that. The state, the state, um, collected taxes to be, you know, home rule have to follow that, right? It is clear that the home rule units have to follow what the state, uh, revenue laws provide. This constitute provides. Yes. Now, the question I guess we're trying to aim it is if the county passes a tax related to motor vehicles, is that covered under this act? And I'm sorry. And how does this amendment that the thing presented to the voters, what could conceivably be covered by that way? We're not. We're not gonna affect the powers that become who you already has. What power is that to be talking about? So I think the answer, Your Honor, is and I'd like to address a few points. So, first of all, the language in the subsection a it is very broad. And again, the voters were given the language of the amendment and the language in subsection a unquestionably encompasses the tax revenue that we've identified in our complaint assessed pursuant to a county ordinance. And I think that's that's unambiguous. And subsection a makes no distinction between taxes and fees that are assessed pursuant to state law or county ordinance. Any home rule units ordinance. That distinction is nowhere in subsection a. It's really nowhere in the amendment at all. But to answer your honor's question, this was again a passing comment that the amendment was not an attempt to alter home rule units, home rule powers. It's not an attempt to redefine the formulation in the local government article of what it means to be a home rule unit or the division of power between a home rule unit and the state government. That's what I interpret that to mean. And again, that was a passing statement that was surrounded by a bunch of other sweeping statements that was to ensure that transportation funds would not be used for anything but transportation. Uh, and again, I think when you look at the language and when you consider what a lay person, a voter would consider when they were deciding whether to vote yes or no on the amendment, I think it's really telling that no distinct. There's no distinction anywhere in the pamphlet between, uh, taxes that are assessed or collected pursuant to state statute versus taxes that are assessed or collected pursuant to a home rule ordinance. And that would be and that would be a significant limitation on the scope of the amendment that I think would have been clearly communicated to the voters and in the actual language of the amendment if it were intended. All right. Thank you. Does anyone else have any questions? Uh, not, uh, Mr Delegates. You may proceed when you're ready. Thank you, Your Honor. I didn't have prepared remarks, so I may be going here and there. But the, um, the purpose of the amendment. Well, let me just say this. We don't know. As Judge Ellis Justice Ellis mentioned, we don't know what the future is going to be. Old maximum that says that the public policy is always inherently subject to revision and repeal. And this amendment was not supposed to was not, uh, promulgated to to, uh, conflict with that principle. In fact, it is consistent with that principle. The six taxes that are mentioned by the plaintiff in its complaints, they say that they are related to transportation. They never say why they are related to transportation. I think it's because they remind you of transportation. Uh, in other words, cars and roads. It seems to me the parking tax, the wheel tax, the gasoline tax, the new motor vehicle and X. A trailer excise tax. The two use taxes which applied a tangible personal property, which is titled with an agency of the state, i.e. secretary of state, meaning cars. They remind you of transportation. But that is that if the plaintiff's construction were to be, um, adopted, um, that would be inconsistent with not only the plain language of the amendment, which I'll get to, but also the legislative debates. Also, the ballot summary, which in other words, those funds that are the described in section a of the amendment, those are the ones that are dedicated to transportation purposes, which I would submit would be dedicated via a statute. Um, and it has such absurd and unjust consequences because you're basically saying that for ever any tax, no matter whether it's a home rule tax, which was enacted pursuant to home rule units, constitutional authority or otherwise, any tax is going to be money. Monies are going to be forever locked away and not be able to be used for any other purpose other than transportation purposes. But we don't really know what related to transportation is. We've we've got no way to figure that out. And this is where, like, if the county's construction were to be adopted, there is no conflict with the principle that we can't see that we can't foresee the future. And public policy is inherently inherently subject to revision or repeal. It is consistent with the legislative debates, consistent with the ballot summary, consistent with the home rule article, and it doesn't, uh, lead to absurd and unjust consequences. Um, this amendment was was promulgated to, um, override the Supreme Court decision in a bait versus Quinn, which said that the to sweep monies out of, uh, special purpose funds and use them for general revenue. That power that the General Assembly had is anti democratic. It's anti democratic because special purpose funds were enacted for a specific purpose. You want to use the monies in those funds for the purposes provided. But if you can just sweep money out of there without, uh, having a debate, uh, about whether to amend the statute or repeal the statute, you're basically, uh, making those special purpose funds meaningless. And what the amendment was intended to do was was to promote openness and transparency in government by requiring the General Assembly to engage with the constituency that is associated with each special purpose fund and to allow that constituent constituency to petition its representatives to tell them you should go left or you should go right. You shouldn't sweep money out of this fund because this is providing important benefits. Now, this amendment, as Justice Ellis, I think alluded to, it has three audiences. One audience is the state. Another audience is non local units, non home rule units of local government. And the third audience is units of home rule, local home units of government. Um, but I think what the important thing to remember is that the monies that are described in section A of the amendment that are only supposed to be used for the purposes provided in B and C B says it's the cost of administering laws related to transportation and other statutory highway purposes, which tells me that if there is a statute that says, use this counties, use this money in this way. Um, they have to do that. Now, a home rule county such as Cook might not have to abide by a statute that says that, but now they do, uh, by virtue of the Transportation Protection Funding Act, which basically puts home rule units of government in the same boat as non home rule units of government to the extent that if there is a statute that says counties do this or counties, you can't do that. Um, they have to follow it because they're there. They're for this purpose, a non home ruled unit of government. But there's got to be a statute that tells you what to do. You have to know what it is that you have to comply with. We can't rely on our imagination to say it is a transportation purpose because the wheel tax reminds me of cars. You know before covid I used to transport myself to downtown using the train, public transportation, rail transportation purpose. I would look out the window. I'd see the highway choked with cars filled with people driving themselves to work. They're driving themselves to their place of employment so that they can earn income that can be taxed. Now we're not doing that. Now we're communications infrastructure, which is generally known to exist under and alongside the public way. My purpose of my example being that you've everything is arguably related to transportation and you would have a extremely unjust results by people substituting their own judgment as to what is and what is not related to transportation. You tie up local governments, not to mention the state for decades until such time as the amendment could either be repealed or modified to be made more clear. And so the amendment does contain language, that language that talks about laws and statutes that that means that there's got to be a statute that tells you what to do. And the statute can apply to a whole unit of government because as I will now shift over to the Transportation Funding Protection Act, the General Assembly is showing you how it works. They're saying that it is known that transportation funding is generated by 10 transportation statutes, and they list them. Some of them are in the vehicle code, some are in the municipal code, the county's code, and so forth. And each of these statutes, these 10 statutes that they list in the act, which is at 30 ILCS 178, they set up a what they're saying is home rule units of government. You're just like a non home rule unit of government to the extent that one of these statutes or one that is subsequently enacted applies to a county. You've got to do what it says here. You can't get out of it. Um, so, you know, the amendment protects the state because it, um, to the extent that the state has established a public policy geared toward a transportation purpose, it allows the special purpose funds to be applied for that purpose unless the General Assembly wants to amend or repeal the statute. And it also protects the local units of government that are receiving money from these special purpose funds to do things like, for example, pay off their highway bonds. That was one of the purposes. It protects the locals. It protects them. It allows them to keep getting their money. That is that the funds that are derived from these purpose funds. So, um, it is very consistent with the, uh, purpose purposes. I believe the purposes of the amendment are, which is to say, if there's a statute that says this, you've got to do it. The state has to abide by it unless the state wants to amend or repeal the statute and local government's home rule or not home rule. You've got to do this. You can't deviate away from it. And so I just think that if you adopt the construction that is being advanced by the plaintiffs, you're going to have inconsistency, inconsistency with the plain language, the legislative debates, which are very clear. The ballot summary dedicated to transportation, the home rule article, and you've got extremely absurd and unjust results. Um, you know, I didn't think there was gonna be cold, but you know, things happen unexpectedly. And sometimes, uh, units of local government and the state, not to mention the state, they have to shift gears very quickly, and public policy has to change, and they've got to be able to be fiscally flexible. It was not intended to lock them into a situation forever, where anything arguably related to transportation based on our imagination, uh, is to be not available to the state or local governments. Um, so I just want to say a couple things about the standing while I can. We have two positions. The taxpayer standing. We believe that the, um, some some pleading requirements are wrote and, um, you know, uh, mechanical and the taxpayer standing allegations have that have to be made is that if you are alleging taxpayer standing, you have to allege misappropriate equitable ownership of the funds that have been unjustly, uh, misappropriated. They don't do that. They just say we have taxpayer standing, so that's not good enough. Conventional standing. I too speculative. The S. B. A. Case that was mentioned by Council. Um, that was a situation which is the opposite of this situation. The plaintiffs here are saying not that there are opportunities. Their pool of opportunities is shrinking. They're saying that it's not getting bigger. The S. B. A. Case involved the federal program that assisted local businesses and getting more contracts, and then it was taken away. And so the pool of opportunities shrink. That's not what we have here. The OSHA case involving non physicians being allowed to perform services usually performed by physicians. Same thing. The physicians opportunities shrink. Um, so I would just say this. If why would the county if faced with a situation if the county were told your local, uh, taxes that you've enacted pursuant to your home rule authority are not those those premise. Those, uh, proceeds have to be put locked away forever to transportation purposes. If they were told that those taxes make up about $250 million, or they did at the time. Why would the county not, um, cease enforcement of those taxes in an effort to retain its fiscal flexibility and, uh, increased other taxes? Like, let's say, for example, the property tax, which is not one of the taxes that's on the list in the complaint. I know that there are minutes. Okay, there are 1.7 million property index numbers in Co County. If you put $150 to each of those, you've got your $250 million. Why would they not do that to remote? Thank you. Don't want to go over. I went over. All right. Thank you, Justice Burke. Do you have any questions? I don't understand your standing argument. Why couldn't these associations have associational standing? They would have associational standing if any one of their members have standing. But what I'm saying is the damages with respect to taxpayer standing the proper allegations in the complaint weren't made. We've cited cases that say that if you're alleging taxpayer standing, you have to allege not just that you're a taxpayer, but you have to allege equitable ownership of the funds that were allegedly misappropriated. They haven't done this. So I feel that the taxpayer standing is has been foreclosed. And then you're talking about conventional standing. You've got to have an injury that's distinct and palpable under the Greer test. So is it distinct? I don't think it's distinct and palpable if the damages are speculative. If you're saying that not that our pool of opportunity has shrunk, but it's just not getting bigger. And when you consider also that, uh, the county could cease enforcement of these six taxes and then raise the $250 million by relying on other taxes. Not that they would want to do that, but they could do that as a as a way of maintaining their fiscal, uh, flexibility. But I'm not saying that as a I'm not saying that there is no associational standing. I'm saying there's no associational standing because none of the members have individual standing because they don't have taxpayer standing because of the lack of the proper allegations, and they don't have conventional standing because of the remoteness of the speculative nature of the damages. Okay, thank you, Mr Bellagrass. That's all. Thank you. Thank you, Justice Ellis. Thank you, Justice House. Um, but Mr Bellagrass, um, thank you for your presentation. Good afternoon. I think we're in the afternoon now. Um, maybe we're not. Maybe it's still morning. 12 30. Okay. Wow. Um, but isn't the isn't the overriding theme in the standing cases that the plaintiff's site the opportunity for for, um, opportunity to get contracts opportunity for an economic benefit? I mean, you're they're saying a couple things. The things they're saying is that you already should have been letting contracts because you've been doing this for a while, they would say, right? You've been doing this for years now, in their view on constitutionally. And it's not speculative. Is it to assume that if Cook County had $250 million sitting in a pot, and the only thing they could spend it on was transportation, they'd probably spend it. I mean, Lord knows there's things that Cook County could spend transportation dollars on. I mean, that doesn't strike me as speculative at all that they would have that money. And so then it's just a question of asking, Well, would these people have an opportunity to bid on it? And it seems to me that they would. I understand your point, Your Honor. It's true. It's you. Basically, the argument is that the injury is distinct and palpable because our opportunities didn't increase. There is a way to make that argument. But, um, I if the county had $250 million that was that it was prevented from using other than for transportation purposes, I'm saying that because public policy is always changing, and we've got Covid is an example of something that's forcing us to change. You probably you just as likely have a situation where the county takes doesn't enforce those taxes that are listed in the complaint and raises other taxes to get the $250 million to use it in a matter that it necessarily to say that if these six home rule taxes were carved out and their proceeds that the county would necessarily spend them on transportation purposes. I don't agree with that. I think they'd find a way to remain independent and get that $250 million from some some other source. That'd be my answer to that. I am absolutely not following what you're saying. I just do not understand what you're saying. I mean, if they unless they repealed those taxes, and then who's getting speculative now? You think Cook County is gonna repeal six taxes that it has, including the home rule use tax? I'd like to see that they could repeal them or make them nominal taxes and get the $250 million from other other other taxes that aren't on the list. Okay, well, if the plants win this lawsuit, there's at least money that they're what Cook County might do going forward. There's at least that money, and that's I would imagine a significant amount of money that was probably been a few years that you've been acting according to the plaintiffs unconstitutionally. There's got to be hundreds of millions of dollars that would be clawed back because that's one of the things they're asking for and put into a fund that said with a constitutional restriction on it can only be spent for money and we want the chance to bid on no guarantee we'll get it but the opportunity to bid is enough that's that's incorrect that you think they're wrong about that they'd have to get those monies the county would probably have to issue bonds I suppose I suppose that you could make that argument that they'd have an opportunity to bid on monies that are clawed back okay okay let's go to let's go to the merits so the the six taxes identified in the complaint is it correct that all six of those were generated pursuant to home rule authority only and not statute I believe all of those are all of those are home rule powers because it generated pursuant to the home rule power because as your honor said a home ruled units of government derived their power to tax from the Constitution unlike a non home rule unit of government which derives it from a from a tax well well that's true unless a statute unless we're talking about something that they can't do yes under the Constitution or or the General Assembly just preempt some rule the General Assembly rule on every tax you have that's the right yeah tell you how and they usually they use clear language this is a denial and limitation of home rule authority under article 6 right right right so the coat the cook County home rule County use tax ordinance isn't there a state law on home rule use taxes home rule County use taxes I there I don't know there may be but I don't think that I don't know that the county would be unable to enact a use tax independently of that statute I'd have to see that statute and see what it says because it's not like the occupation tax which that requires the General Assembly to permit you right right right I think you're right if they don't preempt home rule for some reason if they want to they could create a statute that says how home rules can impose a use tax if they don't preempt home rule that means a home rule unit can follow it or not what I'm trying to we're all generated pursuant to home rule power the amendment doesn't apply to them I'm asking about the predicate of that statement are these six pursuant to home rule constitutional authority only and not governed by statute or any of these governed by statute I don't believe that when you say governed I don't believe that any are governed because to the extent that there's a statute saying home rule unit of government you can enact this or in this in this there would have to be a limitation in there directing the the county to spend the proceeds in a in a given way it depends on what you mean by governed if it says you can do a use tax but you got to use the proceeds for this then they've and they've got their limiting language in there then the county has to abide by that but it's I'm not just saying that the six taxes are home rule taxes and they don't apply the amendment doesn't apply to them I'm also saying that there's it's a bigger argument it's that there's got to be a statute that tells us what we have to do so for example the ten statutes that are listed in the Transportation Funding Protection Act some of those apply to counties and they say counties you're getting money from this special purpose fund you got to use it for X we can't deviate away from that using our home rule power because the General Assembly has limited us they have expressly limited us and they preempted us from getting I understand that I here's what I'm here's what I don't understand unless I missed completely your argument here your position is a statute has to be controlling our actions if we're doing it on our own on our freestanding constitutional authority stay away from us lay office this amendment doesn't apply but if it's a statute is dictating it to us okay now we are governed by the amendment and so what I'm asking you is these six taxes are they any of them are they dictated by statute I don't think they are and when you say dictated there I don't think that there is any statute that that authorizes the parking tax the wheel tax the new motor vehicle trailer tax the I wouldn't and I wouldn't expect there to be but is there any whatever verb you want to put in there is there a statute that directs any aspect of these taxes how they're collected how they're spent the increments in which they can be raised anything the increments in which they can be raised possibly I would have to see what those statutes say but my focus is on what do the statutes tell you that you can do with the proceeds generated by that tax I don't think there's anything that tells the Cook County what to do with the proceeds of those six taxes notwithstanding the fact that some of them may be shall we say authorized or permitted by statute it doesn't matter if it can be author they can say county you can do a use tax but unless they tell you what you've got it what you must do with the proceeds of that use tax it doesn't come under the the purview of the amendment that's my answer to that okay okay let's talk about subsection B mr. Fitzgerald has a take on it and I wanted to get your reaction to it so he says that the phrase other statutory highway purposes was not intended to modify everything that came before it because not everything that came before it was a airports on a highway purpose and I think we can agree airports and a highway purpose virtually everything that came before it is a highway purpose but what is your you rely on this language how do you respond to his point I say I go to the first part of B that says the cost of administering laws related to transportation transportation covering everything and so statutory highway purposes is a subset of transportation so I start with the beginnings the beginning of that sentence cost of administering laws there's got to be a law that's telling you what you got to do with that money otherwise you're using your imagination to write but that's okay but that's just one thing on the list right I mean the next thing which I think is where mr. Fitzgerald would stake his flag it says cost for construction reconstruction maintenance repair and betterment of highways roads streets bridges mass transit inner-city passenger rail ports airports or other forms of transportation I think that's where he would circle it and say what about that where does it say in there that it has to be statutable the beginning of the sentence cost at the cost of administering laws related to transportation it's not the it's not the most clear thing I think it's clear enough that it requires there to be a use certain a transportation related funds and the transportation related funds have to be defined by a statute otherwise you're on your own you're off in space you're using your imagination and you're pretty soon you're coming to the conclusion that the state income tax is also related to transportation it and it and and that construction as I said before is inconsistent with the plain language the legislative debates the ballot summary transportation funds being those that are dedicated to transportation unfortunately the amendment doesn't use the word dedicated but if you want to construe the ballot summary consistently with the amendment it says dedicated so how did you dedicate you've got to have a statute and then you've got the unexpressed conflict with article 7 section 6 not that home rule powers can't are absolute and they can never be overridden but you would expect to see something in the amendment that and the legislative debates mentioned that the amendment was not intended to alter them and you've got all these absurd and unjust consequences that you that you run into when you say that using our imagination something related to transportation can only be used for transportation purposes whatever those are outside of the confines the structure of a tax that tells you exactly what you have to do you've got to have it you've got to know what you got to do you can't just it was not intended to allow people to exercise their imagination to determine what is the transportation related purpose because everything is but if that's true then doesn't the General Assembly have the same problem with this as a home rule unit would I mean if I mean I when I see constitutional language drafted it's not usually drafted with specifics they're not going to name a fund or a tax or a statute because who knows you could change the name of the motor fuel tax to the gasoline tax tomorrow and that doesn't apply so they use phrases like related to transportation what's so vague about related to transportation because everything is related to transportation the plaintiffs don't even say what's what's related to transportation they leave it up to entrance wheel tax car parking tax car it reminds you of transportation that's not something that well then how does the General Assembly enforce this the General Assembly enacts a statute that says you here are here's a tax that's imposed on vehicle weight or here's a registration fee that is imposed on on the vehicles of the first class or the second class here's what the what you do with these proceeds by the way we've got a special-purpose fund the Secretary of State's on the road fund the capital projects fund we're going to put the money into that and to the extent it says counties you're getting some of that money or counties we're going to get you when we when you get it you can't just take it out and use it to cover your budget deficit you've got to use it for the purposes provided for in those special-purpose funds then you have clarity you know what you what it is that you got to do so is it your position the General Assembly could just change the purposes and the statutes then they could they could tax motor fuel and and say we don't deem that related to transportation and so this money can now be spent by the counties on the court system or jails they can change the General Assembly could in your view amend the statute and just completely override this amendment they could oh yes because because public policy is inherently subject to change the amendment is not supposed to lock us in to a purpose for forever where money gets locked away I think it's intended to do exactly that counsel that's exactly what it is it's a lock box amendment it's saying if you generate taxes from transportation you got to spend it for transportation no more sweeps I mean you were you talked about the abate decision I mean the General Assembly used to raid the road every year and and and the year before this amendment they took two hundred quarter of a billion dollars out of it and all the other construction related funds to and and spent put it in the GRF and spend it to balance the budget whatever pay bills whatever and this is saying you can't do that you can't only well but if the General Assembly can do whatever they want and they can still sweep to under your interpretation no no because they enacted the amendment to there was discussion about this in the legislative debate I know but you just under your interpretation they can amend that any statute they want so they could just say okay the motor fuel tax fund isn't going to be used we're not going to divert money into the motor fuel tax fund and give it to municipalities anything they can't they can they can or they can not they could they can they can leave it there the way it is or they can change it though as they see fit because that is that that is allowing the the General Assembly to to to continue its flexibility its fiscal flexibility without because we can't see the future we don't know what the future is so yes we can leave the statutes as long as the as long as things are going okay we can leave the statutes as they are that set up these special-purpose funds that tell everybody what to use the money for or if things change we can amend those statutes or we can repeal them after but without sweeping because sweeping is anti-democratic we're going to have to be deciding whether the constituencies associated with those statutes and those special-purpose funds are they going to have to be reckoned with do we I have to go on record saying I want to repeal I want to change this if you sweep it out of there you're not accountable at all and this was really an attempt to to make government more open and transparent and prevent the can't change the statute you can but that's that's consistent with the with the with the policy that the public policy is inherently subject to revision and repeal so the General Assembly could change the motor fuel tax law yes which right now sends monies to various funds I think it first goes to the motor fuel tax fund some goes to the state construction fund etc and then some goes to the locals and they could start instead they could amend that law and say no this money is not going into any of those funds anymore it's going in general revenue they could say they could say that it's their prerogative but wouldn't that be taking a transportation related revenue and spending it on non transportation purposes in violation of the amendment but I don't think the amendments applies to to I think that there the transportation related purpose has to be specified by a given statute that's the believe the amendment is intended to do if there's a statute that tells you what your statute tells you what your transportation purpose is you don't guess at what it is and to the extent that we go could you could you um could you come in briefly I've taken up a lot of time here I appreciate everyone's patience one last question can you comment on the Transportation Funding Protection Act that law that was passed last year and how that supports your position it says the General Assembly says that it is known the transportation funding is generated by several taxes ten of them as a matter of fact they list them one by one and so and and they all they all provide for special purpose funds and what's going to happen with the funds in with the money's in those special purpose funds and they say by the way to the extent that you're a home rule unit of government either a municipality or a county and you are thinking that maybe you can get out of this to the extent it says municipalities or local governments have to do this and you think that your home rule powers will allow you to get out of it think again your home rule powers are hereby preempted so to the extent that one of these statutes says unit of local government you got to do this or you can't do that you're you're just in the same position as a non home rule unit of municipal government you have to abide by what that says but and so that's consistent with my argument because they said that these ten statutes are the source of transportation function you think that that statute preempted home rule the statute yes the Transportation Funding Act preempted a home rule units of government from deviating out of any of these statutes that are listed in the Transportation Protection Funding Act and mentions those in the amendment but the ones that are in the amendment are laws laws and so there may be future laws there may be future statutes and as you said the Constitution is not going to list them by name or number because they could be recodified or renumbered or whatever the case may be so they're not going to say it but but but the Constitution does mention laws so there might be some you know future laws that are like these ten or maybe one could be one of these ten could drop out and another new one could take its place or you know two or three so and you might have new ones coming on the scene you know adding to the ten or you know you might have the ten going down and three new ones coming in it's always subject to change I understand okay thank you thank you everyone for indulging I think you've covered it thoroughly I have no thank you your honor and obviously we have a number of disagreements in this case I will try to focus only on a few key points in this rebuttal returning to the categories of revenue that justice Ellis mentioned near the beginning of this argument that there is one point that I want to make if with respect to Home Rule units hypothetically if this amendment were only intended to apply to units received from from the state even before the amendment Home Rule units are required to follow whatever strings might be attached to transportation funds that they receive from the state so with respect to that bucket of funds if the amendment weren't intended to do anything further it really wouldn't accomplish very much with respect to the Home Rule units I also want to respond to a few points but but mr. Fitzgerald it would wouldn't it because it would it don't get to change the purposes well this gets to to counsel's broader argument that this amendment was just about special-purpose funds that's not how the amendment is drafted it's drafted in much more sweeping and language than that I think that if the purpose of this amendment had just been to to overrule the bait versus Quinn or to govern how special-purpose funds are used it would be worried very very differently and that's not how it's worded at all it's written in much broader language than that so so that's that's the primary that's one point I wanted to make their counsel also said a number of times that our position would require the court to use its imagination we're not asking anyone to use their imagination we're just asking the courts to enforce this amendment as written subsection a tells us what taxes are encompassed within the amendment subsection B and subsection TC tell us what transportation purposes this revenue can be spent on so the amendment answers those questions the amendment tells us what taxes are encompassed within the amendment and it tells us what what purposes what transportation purposes are permitted so the amendment so the amendment itself answers those questions and it's just to sell us mentioned constitutional amendments are often drafted in broad terms and so that's that's really not unusual looking at subsection B on on the other statutory highway purposes when you read subsection B it's important to pay attention to the summit to these semicolons because counsel referred to statutory refunds and adjustments provided in those laws then we have a semicolon then we have payment of highway obligations semicolon then we have the phrase that I tend to focus on which is again set off by semicolons costs for construction reconstruction maintenance so on and so forth all the way to Ports Air Force and other forms of transportation semicolon so these phrases are all set off one by one I don't think that you can use other statutory highway purposes or another of these terms that is set off by semicolons to limit or qualify the key phrase here that I've that I've pointed out and I think that's very important counsel referred to the word dedicated but as he concedes the word dedicated is not used in steps in subsections a B C or D of this amendment counsel referred to public policy reasons in many ways counsel was repeating arguments that were made to the voters before they went to the polls and in fact in the pamphlet that was sent out to voters on page 481 of the record there's a paragraph of arguments against the proposed amendment it's exactly the same arguments the council raised a moment ago it says approval of the proposed amendment unnecessarily limits the power of the state and local governments to appropriate public revenues for the general welfare of all Illinoisans in order to protect funding for one particular purpose transportation and it goes on from there my point is the voters heard those arguments and they rejected them resoundingly council referred to Kovac 19 again I think it's in the public interest that the Constitution be enforced as written that the choice that the voters made should be honored and as the Illinois Supreme Court held in Jorgensen versus Bogoyevich no principle of law permits us to suspend constitutional requirements for economic reasons no matter how compelling those reasons may seem council on standing said that in some cases existing opportunities were taken away from the from the Association members in those cases that's not a distinction that the cases make at all it's not an accurate characterization of the Women's Chamber of Commerce case and in the West Virginia versus heckler case that was about funds that had not been awarded to the state of West Virginia that ought to have been awarded to the state of West Virginia so that distinction certainly does not work for that case council refers to the TFPA to the Transportation Funding Protection Act you refer only to subsection a not to subsection B of that statute and under councils interpretation the amendment still would not overrule a base versus Quinn because as counsel stated numerous times under his interpretation special fund statutes may still be amended or repealed and finally on the point that counsel suggested that these taxes might be repealed first of all that's incredibly speculative second we've established in our complaint in the exhibits that the county has some very serious transportation needs I don't think it's plausible to say at all that the county would repeal all those taxes if it had to spend the money on transportation so I so I thank the court and for all the reasons stated today in our briefs we asked the court to reverse the dismissal order and to allow us to proceed past the pleading stage of this litigation thank you thank you does anyone else have any questions based on that okay all right very well this matter will be taken on advisement the case was very well argued and the briefs were very well done exceptional jobs by both of you this matter will be taken advisement and decision issued in due course thank you so much